RIGSBY, Respondent, v. OIL WELL SUPPLY COMPANY, Appellant.

**St. Louis Court of Appeals, March 17, 1908.**

1. **RES ADJUDICATA: Former Appeal: Record Substantially the Same.** On a second appeal the questions decided on the first appeal are *res adjudicata* where the record is substantially the same, and the fact that certain evidence introduced on the first trial was omitted from the second but was immaterial to the issues involved in the second would not prevent an application of the rule.

2. **MASTER AND SERVANT: Safe Place to Work: Prima-Facie Case.** In an action by an employee in a lumber yard for damage caused by the falling upon him of a stack of lumber alleged to have been negligently stacked by the direction of the

defendant's foreman, the evidence is examined and held sufficient to justify a submission of the question of defendant's negligence to the jury.

3. ———: ———: **Negligent Piling of Stacks of Lumber.** For an employer to pile lumber in high stacks so insecurely arranged that they are liable to fall over on employees who are compelled to work about them, is failure to use ordinary care for their safety.

4. ———: ———: **Instruction: "Dangerous."** In an action by an employee for injuries caused by his employer's negligently stacking a pile of lumber which fell upon the plaintiff while in pursuance of the duties of his employment, an instruction for plaintiff authorizing a verdict for plaintiff if the pile of lumber was so stacked as to be dangerous, when taken in connection with other instructions, is not open to the objection that it required the defendant to use more care than necessary to make the place reasonably safe.

Appeal from Butler Circuit Court.—*Hon. J. C. Sheppard,* Judge.

AFFIRMED.

*William N. Barron, Percy Werner* and *Everett W. Pattison* for appellant.

(1) Maddox's instructions as to piling the stacks were proper, and he had the right to intrust the execution of them to his employees. Forbes v. Dunnavant, 198 Mo. 209; Ryan v. McCully, 123 Mo. 636; Brown v. Railroad, 95 Mo. 277; Kimmer v. Webber, 151 N. Y. 423; Hussey v. Coger, 112 N. Y. 621, 3 L. R. A. 559; Frazee v. Stott, 120 Mich. 627; Kreigh v. Westinghouse, 152 Fed. 123. (2) The falling of the stack which struck the plaintiff was due to the negligence of his fellow-servants, which was one of the assumed risks of the employment. Maddox having given proper directions as to the piling, if the employees failed to carry them out, they were negligent. Graesel v. Weber, 76 Mo. App. 677; Livengood v. Lead & Zinc Co., 179 Mo. 238; Harley v. Buffalo Car Mfg. Co., 142 N. Y. 37;

Foley v. Gas Light Co., 9 App. Div. 91. (3) The specific act of negligence alleged in plaintiff's petition is wholly unproven. This act is set forth in the opinion of NORTONI, J., on the former appeal. Rigsby v. Oil Well Supply Co., 115 Mo. App. 316. And that decision furnishes the rule of law for the second trial. Ashby v. Gravel Road Co., 111 Mo. App. 86. (4) It is only the duty of the employer to use reasonable care to adopt such methods that his employees who exercise ordinary care will be able to perform their duties in reasonable safety. 1 Labatt, Mast. and Serv., p. 83; 2 Thompson Negligence (1 Ed.), p. 1009; Payne v. Reese, 100 Pa. St. 306; Shaffer v. Haish, 110 Pa. St. 575; Tobin v. Friedman Mfg. Co., 67 Ill. App. 149; Railroad v. Henderson, 134 Ind. 636; Meehan v. Railroad, 114 Mo. App. 402; Cunningham v. Bridge Works, 197 Pa. St. 629. (5) The instruction fails to limit the negligence to the specific negligence pleaded. Allen v. Transit Co., 183 Mo. 428; Lowenstein v. Railroad, 110 Mo. App. 686; Schroeder v. Transit Co., 111 Mo. App. 74; Hamilton v. Railroad, 114 Mo. App. 513; Politowitz v. Citizens' Telephone Co., 115 Mo. App. 61; Kohr v. Railroad, 117 Mo. App. 308; Briscoe v. Railroad, 118 Mo. App. 668, 671. (6) The jury are not informed what would constitute a negligent construction of the stack. Steinman v. Transit Co., 116 Mo. App. 677. (7) The instruction permits a recovery if the stack was dangerous to any extent, while defendant's duty, if any, with respect to the pile, was only to have it reasonably safe. Longree v. Jaekes-Evans Mfg. Co., 120 Mo. App. 495; Sinberg v. The Falk Co., 98 Mo. App. 554; Hurst v. Railroad, 163 Mo. 318.

*Nathaniel C. Whaley* and *David W. Hill* for respondent.

(1) The decision of this court in this case on the former appeal is the law of this case. That opinion is

clear, able and exhaustive. Counsel for appellant do not even intimate that it is not sound law. Rigsby v. Oil Well Supply Co., 115 Mo. App. 297. (2) Respond-ent's first instruction at the outset uses the word "dan-gerous" instead of "not reasonably safe," but before concluding told the jury that before plaintiff could re-cover, the jury must find "that the stack of lumber fell down as a result of the failure of defendant, through its foreman or superintendent, to exercise ordinary care and caution in the stacking and handling thereof." This instruction goes much further than the instructions which were approved in the following cases: Thompson v. Poplar Bluff, 124 Mo. App. 439; Squires v. Kansas City, 100 Mo. App. 631; Perrette v. Kansas City, 162 Mo. 238.

GOODE, J.—This is an action for damages for a personal injury received by the plaintiff while working for the defendant in its mill or factory. In said estab-lishment are manufactured sucker rods and other sup-plies made of wood for use in working oil wells. In the factory logs were sawed into boards or slabs from one and a half to three inches thick and of varying lengths of from thirty-two feet to eighteen feet, or less. As these boards were taken from the saw they were piled on stationary skids leading from the saw carriage to a machine called an edger on the same floor and some distance away. The use of the edger was to cut the boards into square strips one and a half to three inches in their dimensions. After these strips had been run through a finishing machine, they are ready for use in the oil wells. Plaintiff's main work was off-bearing the rods after they were finished, or at the edging machine. But when he was hired he was told by Maddox, the su-perintendent of all the men on the floor, that he would be under the direction of Dallas Austin, who was fore-man of the edging machine gang and had principal

charge of said machine. Austin, as well as plaintiff, was under the control of Maddox, but the latter instructed him to help Austin whenever requested and to do as Austin ordered. In obedience to these instructions from Maddox, plaintiff, whenever he was called upon by Austin, would assist the latter and the members of the edging-machine gang to lift planks from the piles of planks on the skids to the edger, and it was while doing such work he received the injury for which he seeks damages. The accident occurred in this way: planks were piled on the skids in stacks from three and one-half to six feet or more high. These stacks would topple over occasionally. As to how often the testimony varies. Some witnesses say the piles would fall two or three times a day, but others say they fell two or three times a week. Suffice to say, the conclusion is fair that the stacks were unstable and frequently toppled and fell. Plaintiff was called from his work of off-bearing by Austin to help lift a plank to the edger. Just as he stooped to pick up the plank, a stack of planks fell against him, knocking him down and breaking his leg. This case was here before and all the facts are fully given in the former opinion (115 Mo. App. 279). The appeal was from a ruling which forced plaintiff to take a nonsuit and the inquiry was whether there was evidence from which the jury might have found his injury was due to the negligence of his employer, unmixed with fault on his part. The case was tried anew after the reversal of the judgment, the trial resulting in a verdict for plaintiff for $1,400 and the present appeal by the defendant.

It is contended for defendant the evidence in the present record is materially different from what it was before, but we do not accept this view. An attentive perusal of the record has convinced us the evidence now lacking which was before us on the previous appeal, has no bearing on the questions to be determined. In the

first decision we held plaintiff was entitled to go to the jury on evidence tending to prove, firstly: that Austin in his capacity of foreman and not in his capacity of common laborer and fellow-servant of plaintiff, had negligently ordered plaintiff into proximity to the insecure pile of lumber, that is to say, into a dangerous place and had thereby caused the injury; and tending to prove, secondly, the lumber was carelessly stacked under the immediate supervision and orders of Maddox, and without any precaution to prevent it falling and thereby the employees who worked about the piles were needlessly imperiled. The opinion discussed a certain contention about Austin having been negligent in lifting a plank in the pile of lumber just as plaintiff stooped, causing the pile to topple and fall on plaintiff. It was held this act of negligence, if it occurred, was done in Austin's capacity of fellow-servant of plaintiff and defendant was not responsible if it was the cause of the injury. The former opinion left two possible grounds of recovery open to plaintiff: the negligence of Austin as foreman in ordering him to work in a place not reasonably safe, viz.: in proximity to the unsteady pile of lumber, and the negligence of Maddox, the superintendent, in ordering or permitting the lumber to be piled in stacks dangerously unstable knowing the employees had to work about the stacks. The present record does not contain testimony the first one did going to show Austin carelessly prized over the pile of lumber while plaintiff was near it, but this evidence would be immaterial if present, because of our ruling that said act being that of a fellow-servant, afforded plaintiff no ground of relief. In other respects the present record is substantially like the previous one. Though it was held before plaintiff might recover on proof that Austin in his capacity of foreman, ordered him into a dangerous place, this chance of recovery was not utilized on the second trial. At plaintiff's instance

the court submitted only one ground of recovery to the jury, namely: that the stack of lumber which inflicted the hurt was so carelessly piled under the direction of Maddox as to be dangerous to employees working around and near it, as Maddox well knew; that this stack fell and broke plaintiff's leg while he was in the line of his duty and exercising ordinary care for his own safety; that the danger of the stack falling was unknown to plaintiff and that it fell as the result of the failure of defendant, through its foreman and superintendent, to exercise ordinary care in the stacking and handling of it. Thus it will be seen plaintiff's right to a verdict was confined to a finding by the jury of negligence on the part of Maddox, the superintendent, in stacking the lumber which broke plaintiff's leg. Notwithstanding our former decision of the point, defendant's counsel again insist most earnestly the court should have directed a verdict for their client. The stress of this contention rests on the assumption of a variation in the evidence introduced at the second trial from that introduced at the present one, but, as we have said, there was no material variance. Therefore what we have to determine in passing on this assignment of error is, whether or not any evidence was adduced of negligence on the part of Maddox. There can be no doubt as to what the answer ought to be to this question which, indeed, was previously decided. Witnesses swore the stacks were not supported by standards or braces, though they might have been. Defendant's counsel argue that bracing by standards or otherwise was impracticable or would have too greatly hindered the work in the factory. This might be a question for the jury. But conceding the argument, there was ample evidence to show negligence on the part of Maddox in the mode of stacking the lumber. For instance, one of the workmen testified "the timbers were very heavy and some of them very long, and they stacked them too high; that was the

trouble." This witness said he talked to Austin, the foreman, about this fact two or three times. Now it is conclusively established the stacking was done under the eye of Maddox and even according to his directions. Occasionally when he was not about the factory his directions were departed from, either from negligence on the part of the workmen, or because in some exigency his views could not be observed. Maddox had ordered the long boards to be laid at the bottom of the stacks and this was done as far as possible; but could not always be done. We find testimony regarding the particular stack of lumber which fell on plaintiff. A witness swore he helped pile said stack and did it under Maddox's direction. Plaintiff swore this pile was higher than ordinary and the planks on top of it were shorter than the others. A witness (Wilburn) said he helped build this stack and the workmen stacked the lumber according to the way they were ordered by Maddox. Another witness testified Maddox had seen the lumber fall frequently but yet told the workmen to pile it as high as it was piled. This witness testified the stack which fell on plaintiff was built under Maddox's direction and he (Maddox) was there at the time; but witness could not say whether or not he gave any particular directions. A witness said he had seen the piles fall over when they were not over three feet high, and there was testimony the lumber was stacked as high as it was on account of lack of room. After a careful examination of the point we remain convinced of the propriety of our first decision, that it was a question for the jury as to whether plaintiff's injury was to be ascribed to negligence in not using care to pile the lumber so the stacks would not unnecessarily endanger employees working around them. We think it is apparent that due care was not used if some of the witnesses swore truly about the conditions and the conduct of the superintend-

ent.   The error assigned for the court's refusal to direct a verdict for defendant must be overruled.

It is further contended the specific act of negligence alleged in plaintiff's petition remained unproved.   As said, the only act of negligence on the part of defendant left to the jury was regarding the careless piling of the lumber.   Negligence in this regard was averred in the petition and we have held was established.

Counsel say the main instruction given for plaintiff failed to limit the issue of negligence to the specific negligence pleaded.   The instruction submitted the case on much narrower issues than were joined in the pleading; for, as stated, it limited the recovery to a finding of carelessness in piling the lumber under the direction of the superintendent.

It is further complained the instruction did not advise the jury as to what would constitute negligence in stacking the lumber.   As to this point the jury were told if it was carelessly stacked and so high it was liable to fall at any time, and on that account was dangerous to defendant's employees, such conduct was negligence. To pile ponderous boards in high stacks, so insecurely arranged they were liable to topple over on men who were compelled to work about them, was surely a failure to use ordinary care for the safety of the men.

Complaint is made of the first instruction because it allowed recovery if the stack was dangerous in any degree; whereas defendant's duty was only to make it reasonably safe.   The instruction will not bear the meaning defendant's counsel seek to fasten on it, to-wit: that if the stack was slightly dangerous, though reasonably safe, still plaintiff was entitled to a verdict.   The charge made the issue of defendant's negligence turn on whether or not the stack was carelessly built so high and in such a manner it was liable to fall at any time and on that account was dangerous to employees.   But the jury were required to find not only that the stack

was dangerous, but that Maddox knew it was and that it fell because the superintendent had failed to exercise ordinary care in piling it. In another instruction which was granted on defendant's request, the jury were advised that defendant was only bound to furnish reasonably safe appliances and instrumentalities. The word "dangerous" in such connections has been held to be synonymous with "not reasonably safe." [Squiers v. Kansas City, 100 Mo. App. 628, 631.] Whether this is true or not, the jury could not have been misled as to the sense in which it was used in the first instruction. Said instruction read as an entirety and along with the one given for defendant made the meaning clear.

The first instruction for plaintiff is said to assume the men who worked at the saw and the men who worked at the edger were not fellow-servants. We fail to see the cogency of this argument. As we have said repeatedly, the ground of recovery left to plaintiff in his instruction was a finding of negligence on the part of Maddox, and no one will contend Maddox, who was empowered to hire and discharge men and exercise control over the entire force at work on the floor, was a fellow-servant of plaintiff.

It is insisted the falling of the stack of lumber was due to the negligence of the workmen and plaintiff could not recover. Counsel press this question on the court in the face of the evidence that Maddox had this very stack of lumber piled under his supervision. It is true sometimes his directions were not followed in stacking the lumber. Counsel surely are not serious in asking this court to hold as a matter of law on such contradictory evidence, that the cause of the injury was the careless act of a fellow servant. Counsel ignore or forget the positive testimony regarding Maddox's connection with the stacking of the lumber which hurt plaintiff.

Though we feel the burden ought not to have been imposed on us, in view of the care given to the former

decision and the identity of the evidence on the present appeal with that reviewed before, we have carefully gone over the voluminous record in the case and the elaborate brief of defendant's counsel. We find not the least support for the theory that defendant was entitled to an order for a verdict in its behalf. The court below gave most of the instructions requested by defendant and was far more liberal to it in stating the doctrine of assumption of risk than the present state of the law in this State warrants. [Blundell v. Elevator Co., 189 Mo. 552, 80 S. W. 103.]

The judgment is affirmed. All concur.